Welcome to the court. We appreciate the advocacy from counsel on both sides of the case. I'm Judge Gould. I'll be presiding today and I'm delighted to be sitting with my colleague Judge McEwan on my right and Judge Rustani from the Department of International Trade is also sitting with us and is participating remotely. Appellant can start off the argument now. We have two counsel arguing for appellants. Who's going to go first? Okay. Is that Mr. Swain? Yes. Good afternoon. May it please the court, I am Tony Sane with me as my partner Lon McIntyre. We have the honor of representing Riverside County Sheriff's Department Sergeant Dan Ponder. Counsel Sane, how do you say this case is set? For 20 minutes per side and you're splitting it with the counsel for Ponder. So have you decided? You're taking 10 minutes? Approximately nine, your honor, and I would like to reserve two for rebuttal if I may. Okay, yeah, just watch your own time. Yes, sir. And stop before all your time is used up. Yes, sir, I will. Thank you very much. May it please the court. The court should award qualified immunity to defendant Ponder for two reasons, the first of which I will address and the second of which my partner, Ms. McIntyre, will address. First, whereas here the uncontroverted evidence shows that the sergeant observed the were observed by civilian witnesses both prior to and during his shots fired, his mistake as to the existence of an ongoing deadly threat cannot be unreasonable and thus he is entitled to qualified immunity. And second, whereas here on the uncontroverted evidence produced at trial on the purely legal issue of qualified immunity which was not waived, where there is no clearly established law that existed prior to the incident date at issue in this case with specifically comparable facts that would have put defendant Ponder on notice as to his potential unconstitutional shooting, he is also entitled to qualified immunity. Counsel, I have a question for you. Yes, your honor. Is it unlawful for a police officer to use deadly force, which here I two shots fired, and to shoot someone in the back if they do not pose a threat to the officer or to the public? Your honor, it is certainly unlawful for an officer to knowingly do so. However, the uncontroverted evidence in this case is that Sergeant Ponder did not knowingly shoot at Mr. Nehara's back. The evidence is actually to the contrary, that all of his six shots were aimed at the front center mass of Mr. Nehara, both when he initially fired and during the ongoing fire. And at a certain point during the ongoing fire, Mr. Nehara began to blade his body while still presenting the front center mass toward the deputy and still advancing with the bat raised, one shoulder slightly more forward than the other. And what's interesting that's important to note in this particular record, it was uncontroverted at trial that defendant Ponder's perception of this threat fact was corroborated by two civilian witnesses. You keep talking about undisputed and corroborated, but there was a lot of dispute here. No single of the other witnesses saw the entire event. And it then comes down to Mr. Ponder's credibility, and there were a number of places in the record where he was impeached. So I appreciate your argument, but in looking at it, now that we've had a trial, it's quite a different picture than we were in the earlier stages. Isn't that true? Not quite, Your Honor. The actual evidentiary record will show you that if you look more closely, particularly at record pages... And I have looked very closely. Thank you, Your Honor. At record pages 1146 through 47, as to Ms. Moreno, and at record pages 1178 through 1180, and as well as 1194 for Mr. Gaspar, they're both very clear that they do see the entire shots fired. They state very clearly that they are able to see it. Ms. Moreno says she's able to see it peripherally. Mr. Gaspar says that he sees all of the shots that were fired. All the shots that he heard, he says he saw. And both of those witnesses state very clearly that for all of the shots that they observed, they saw Mr. Nehera facing toward the deputy with the bat raised in a manner that they viewed as threatening to the deputy, while Mr. Nehera continued to advance toward the  So you also have the expert testimony, and you've got the shots that ultimately felled Mr. Nehera were in the back. I know you keep talking about blading and turning, but these are shots filed directly in the back. So how do you square that with your description of what happened? Absolutely, Your Honor. There's a key distinction here that has been lost by plaintiffs and their opposition. There is a very big difference between aiming and striking. It was uncontroverted that all the shots were aimed at the front and aimed at a time when Mr. Nehera was raising the bat in a manner presented as threatening to the deputy. There was no or forensic evidence to controvert that fact. Now, while it is certainly true, and there is no dispute that at least two of Mr. Sergeant Ponder's shots struck Mr. Nehera in the back, it is also uncontroverted that none of those shots were aimed at his back. And the civilian witnesses who were there, none of them saw any shots enter the back. They never saw Mr. Nehera fired upon. I didn't see it, but the forensic evidence shows it. This is true, but there is a distinction, Your Honor, between what was observed at the time and what was learned post-incident. And that distinction is key here to the issue of reasonable mistake. When all of the civilian witnesses make the same factual mistake that Sergeant Ponder made, his mistake is per se reasonable. The issue here is not reasonableness of force. We concede that the jury found excessive force here. That's not the issue on appeal. The issue on appeal is qualified immunity, and specifically on this element, and then my partner will address the clearly established law element. On this element, whether on all the evidence presented at trial, his mistake as to the existence of an initial deadly threat and an ongoing deadly threat was reasonable. And when he perceived the same set of threat facts that every other witness to the shooting also saw, according to the record, his mistake has to be reasonable. That is the core of why he is entitled to qualified immunity on this particular set of facts as presented at the evidence at trial. Maybe you can help me to square something that was in your brief with the jury instruction. So I'm looking at your reply brief where you clarified something you just said. It's not a sufficiency of the evidence. We're talking about qualified immunity. Yes, Your Honor. But you say in the reply brief that this issue of reasonable mistake was never before the jury. Correct. However, when I look at the jury instructions, jury instruction 19 and then subpart 11, it says whether a reasonable officer would have or should have actually perceived a mistaken fact. So how do you square what the jury was instructed on with your statement that that was never in front of the jury? We never argued and no evidence was presented as to whether or not Sergeant Ponder was mistaken. So while that jury instruction was included in there, we never said or asked the jury to decide the issue of qualified immunity. We never presented any evidence or testimony that he was mistaken at trial. Our belief at trial was that his perception justified reasonable use of force and that his use of force deadly force was reasonable. But even if you didn't argue it in that structure, the jury is instructed generally to look at all the jury instructions. And I don't think that jury instruction was objected to or any effort to X that out of the jury's province, was it? No, Your Honor. But again, there was no argument or evidence presented on the issue of mistake of fact. So that issue could not be decided by them. We didn't present any testimony. There was no argument in opening, closing or anybody by either side on the issue of mistake of fact. This is the first time that we are addressing it until the appeal. Our position was that this was a reasonable use of force supported by the evidence. But on appeal, as Your Honor very well knows, we have to defer to the findings of the jury. The question of whether or not this was a reasonable use of force is not the issue on appeal. But for qualified immunity, the standard is somewhat different. Applying ground reasonableness to the facts that were proved at trial, whether or not this mistake was reasonable is an issue on appeal that was not prior previously addressed. And Your Honor, I see that my time is nearly exhausted. I will just point out that a couple of other interesting facts. One of the things that plaintiffs point to in their opposition is the issue of timing. And in their opposition brief, they suggest that there may have been as much as 25 or 30 seconds from the first gunshot to the last gunshot. This is not supported by the evidence at all. And a reasonable inference must be supported by admissible evidence. The testimony they rely on for this fact is actually contrary to that inference. The testimony from Mr. Gaspar at page 1194 of the record was he said he was unsure as to how much time passed for the shots, but he estimated not that there was a five second gap between shots. That's not what he said at all. In fact, he makes no such estimate as to how much pause there is between shots. What he says is that his estimate from the first shot to the last shot was between five and 15 seconds. And again, that is at record pages 1189, 90 and 94. However, even if we were to assume that is true, even if we were to assume that the amount of time that passed from first gunshot to last gunshot was about 15 seconds, it doesn't change the fact that no evidence was presented at trial by anybody that Sergeant Ponder knew that he was firing at a non-threatening person when he fired his shots. There's no evidence to present that. In fact, the jury finding of a lack of malice supports the idea that they even believe that he was not deliberately firing at the back, even though it is indisputable that some of those shots, including the two fatal shots, did strike him in the back. So on the evidence presented at trial, not the speculation, not the argument on these facts, Sergeant Ponder's mistake of fact has to be deemed reasonable, given that there is no controversial evidence on that point. OK, thank you, counsel. Thank you. Your time was has expired, but I'll give you one minute for rebuttal. Extra time. Good afternoon, Your Honors. Alonne McIntyre on behalf of the defendants, County of Riverside, and Sergeant Dan Ponder. I would like to address the qualified immunity analysis that should be applied in this case and also address the issue of waiver that's been raised by the plaintiffs. On the second prong of qualified immunity that we're addressing here today, the legal question of whether Sergeant Ponder made a reasonable mistake and whether he violated clearly established law was not before the jury. Therefore, this is purely a legal question for this court to consider. We know that the law requires that when looking at prior cases that might constitute clearly established law, the cases must be sufficiently similar in their facts, their specific facts to put the officer on notice. We also know that the cases must put the question beyond a debate. May I just ask you a question? I thought we already ruled that the law was clearly established, so how is this still an open question? If you mean already ruled in terms of the prior appeal? Yeah, the prior opinion always said that the law was clearly established in this area by both the Supreme Court and cases at the circuit level. Yes, Your Honor. So what are we doing here with this issue? That ruling was made on a different set of facts. That was on a summary judgment set of facts. We're now here post-trial and we have a different trial record to consider that has supplanted some of the concerns that the court had or some of the facts that the court found that then applied the specific cases to. Okay, so which were the facts that changed in Ponder's favor? For instance, the fact that in the summary judgment appeal, the fact was disputed whether or not the bat was raised or pointed down. The trial evidence here clearly established without doubt that the bat was raised in the raised position. There was also some dispute. There is some dispute about that as well as to the position, so in the testimony. Well, all the eyewitnesses and Sgt. Ponder were consistent about whether that the bat at the time, not at the time of the pepper spraying, but at the time of the shooting that the bat was actually raised. Either raised or on his shoulder. Yes. Right? Correct, Your Honor. Yes. In a position as if you were a batter raising your bat to strike a ball. So that's a very significant different legal factual posture for this appeal. And it makes the analysis of the case law in terms of whether there were specific facts in similar cases that would put Sgt. Ponder on notice very different here. And as the Supreme Court in White v. Pauley has stated, the clearly established analysis in an excessive force case requires the court to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. So we must have settled law, we must have controlling authority, and we must have a robust consensus of cases in order to find Sgt. Ponder was on notice that his conduct was unconstitutional. And I'd also like to note that in Casella, the court does talk about and other cases have talked about the fact that this is a very hazy border. And in cases of doubt, the border between permissible and excessive force must be decided in favor of the officer. Going back to your original premise that when we decided the initial qualified immunity ruling, we sent it back because there were factual issues that implicated clearly established law. But when you got to trial, this issue that you're focusing on, whether he posed a threat to the officers, that went to the jury, didn't it? It did. And what's the upshot of that? What do we make from that legally that the jury was instructed on this threat issue? Well, again, that comes back to our position in this appeal is that the jury's conclusion that the force was excessive or unreasonable does not control the question of the clearly established law issue. We know what clearly established law is, and that's not for the jury, but the facts are for the jury. And in making that determination, they followed this rather extensive jury instructions, which included this threat issue. So how does the jury instruction interface then with the ultimate determination? I don't think the jury instruction interfaces at all because there was no evidence presented on the reasonable mistake issue. And without evidence, the jury would have nothing upon which to base a verdict that took into consideration that particular instruction. It was not argued, and there was no evidence on the reasonable mistake issue that we are raising here in this appeal. So, of course, the issue I was focusing on was threat, and I know there's some different views as to whether he posed a threat, depending on what period we're talking about. And I recognize it's kind of a compressed period, but it doesn't seem to me that the evidence that he posed no threat is uncontroverted or that he posed a threat is uncontroverted. Do you agree with that? Well, no, I believe that the evidence was uncontroverted in terms of the eyewitness testimony and Sergeant Ponder's testimony and the expert's testimony that Mr. Nehera always posed a threat throughout the encounter, from the pepper spray on or at least certainly during the course of the shootings that occurred. And we've laid out that evidence and that testimony in our briefing. But here, we're really discussing the existence of a reasonable mistake about that threat by Sergeant Ponder and whether he was reasonably mistaken in his view of Mr. Nehera's conduct and his decision to use deadly force to address that. Everyone who testified on it agreed that there was some threat, but that doesn't really tell you how imminent the threat is and whether the response to the threat is appropriate or excessive, right? So it's a general statement about, yes, he was a threat, but it doesn't tell you what kind of threat. And of course, Sergeant Ponder, the only one who really saw everything, he could be disbelieved because he was impeached several times. So I'm not sure that the level of threat that is of concern is a truly undisputed issue. Well, we have the evidence that's not disputed, that Nehera was facing Sergeant Ponder throughout the encounter. No, but you're both trying to say that because witnesses said he was a threat, that that makes it undisputed. But I'm saying threat as a general matter is not the issue. So I want you to agree with that or don't agree with it. Just respond to it. Sure, Your Honor. I would disagree. But I think the more important issue here that we have moved on to in terms of this appeal is that given the evidence that was presented at trial, Sergeant Ponder was not unreasonable in mistakenly believing that Mr. Nehera posed a threat. And that's based on the cumulative evidence in this case and that was presented, evidence admitted at trial, not facts that have just been alleged or thrown out there without support in the record. So as a matter of law, a reasonable officer would find it objectively reasonable to use deadly force under these circumstances, even if he was mistaken in his perception that Mr. Nehera posed a threat. I'd just like to point out on getting to whether or not there is clearly established law with specific facts that would apply to this situation, we have pointed out in our briefing, in particular, I'd like to point out the Blanford case, where the suspect was erratically acting, not following commands, carried a sword raised above his head, and even though he was moving away from the officers, the officers were found to be reasonably mistaken that the suspect was a threat to themselves or to persons who might be in the house or yard. This is even though the suspect was moving away from them and they shot him in the back and qualified immunity applied in that circumstance. The court in Blanford held that the deputies had caused to believe Blanford posed a serious danger to themselves and to anyone in the house or yard. I would posit that those facts are very similar to this case. In fact, our facts are even stronger that would have allowed Sergeant Ponder to understand that he was, even if reasonably mistaken, that he was entitled to use deadly force. Okay, 28-inch sword. They warned him and he raised the sword in the air and made loud growling and roaring noises and continued to advance. Yes. In this case, Mr. Nehera held a bat, which has been considered to be a deadly weapon. He was pepper sprayed twice and told to drop the bat and he refused to do that, to follow that command. He continued holding the bat in an upright position throughout and in a manner that all the witnesses said was threatening and he did not follow any of the commands that Sergeant Ponder made. So I think the similarities are just jump off the page. The similarities or dissimilarities I think that the judge points out here is that there was no warning that there was going to be deadly force against him and there was also no warning that he was advancing at that point. We have a little bit of two steps forward, two steps back. That seems to be in the record. And also, there was nothing, you know, no affirmative threatening acts that he did. So it's hard to say, well, Blanford is right on point and therefore he gets qualified immunity. I think there's quite a few differences there. So, you know, I think Blanford is instructive but certainly not definitive as I read it. Now maybe you read it differently. Thank you, Your Honor. Well, I do believe that there was a warning in this case in the sense that the officer did not use the specific words, if you don't drop that bat, I'm going to shoot you. However, the officer repeatedly commanded him to drop the bat. Well, that's different than saying drop the bat or I'm going to shoot you or drop the bat, I've got my gun out. What happens is the gun comes out and then boom, boom, boom, boom, boom, and then he's dead. Well, he'd already been pepper sprayed twice, so the officer had resorted to less deadly force in order to warn him. I don't think there could be any clearer warning to Mr. Nehera about the potential consequences of his conduct in failing to follow these commands repeatedly and to continue to hold the bat. And there's also, in terms of Mr. Nehera advancing, and Your Honor had mentioned the stepping forward and back, an officer is not required to retreat from the situation and had Sergeant Ponder taken a couple of steps back or forth, did not change the fact that Mr. Nehera was advancing toward him, and that directional movement is what's really key here. I'd also like to, and we've cited some other cases in our briefs that we feel are similar facts that would be sufficiently specific to give Sergeant Ponder notice that he had not engaged in unconstitutional conduct. Counsel, I'm sorry to say you are over your allotted time, and unlike former Chief Justice Menges, I won't stop you in mid-sentence. But could you try to wrap up your argument? Thank you, Your Honor. I appreciate the opportunity. I wanted to point out, final point, is that plaintiffs have identified no cases that were specifically on point that would have put Mr. Sergeant Ponder on notice, and we've distinguished those cases particularly in our reply brief that you will see. I didn't reach the issue of waiver, but we would certainly contend there has been no waiver on this legal issue by failing to, allegedly failing to raise it in our Rule 50A motion. We did raise the underlying facts, and it was sufficient to preserve the issue for appeal, and Dupree v. Younger has made that clear now. Thank you, Your Honors. Thank you, Counsel. And for your planning purpose, while your time was up, I'll give you one minute for rebuttal, if you want. I think that's what he just reiterated what he said before. There is one minute for rebuttal for your side, but that's after. Right. We're going to wait and hear from the other side first, yeah. Hear from Appellee. And, Appellee, we let the appellants go a little bit over their time, so if you need an extra minute or two, just tell me. Thank you very much, Your Honor, and good afternoon. And first and foremost, I want to apologize to everyone for being late. And no apology needed. I got the wrong address. I saw the district courthouse, but it wasn't here. But thank you for waiting for me. First of all, I think, as has already been discussed, there are multiple factual disputes in this case, which is one of the reasons this particular panel affirmed the lower court's ruling denying summary judgment, denying qualified immunity, and saying on plaintiff's facts the law was clearly established. As we all know, there's two prongs to the qualified immunity analysis. On the first prong, it's whether it was unconstitutional. That has been agreed upon by the briefing and by the jury. So all their arguments that they're making, that this was not an unconstitutional use of excessive force, is difficult to understand. Secondly, the point that Judge McGowan made is absolutely correct. The jury instruction, the model instruction 9.25, had the language in it so that the issue of reasonable mistake was before this jury. And the factor that she referenced was whether a reasonable officer would have or should have accurately perceived a mistaken fact. I want to stop you there because the argument I heard from both counsel was that, yes, that was in the jury instruction, but there was no testimony or argument on this mistake of fact issue at trial. How do you respond to that? Well, I respectfully disagree. In fact, that was half of their theory of the case. Half of their theory of the case was, how do we explain these two shots to the back? The officer and his credibility was in question, as pointed out by the decision of the lower court. What happened is he gave a statement after this incident where he said, after my first group of shots, I repositioned, I assessed, and I noticed that now the decedent was no longer a threat. That was his original statement. But what happened is the attorneys and the experts and the officer, and this is in the trial record, all met together and had an all-day meeting before his deposition to come up with a new story. And their new story was they fired all five shots in one second at his chest, trying to talk the jury into this blading business. They called an expert, Borden, who testified about perception reaction time and essentially said the officer was mistaken. He thought he was shooting in his front, and he must have been shooting in his back. They argued in closing argument the same thing. So for them to say, we never raised the argument, that was a central part of the entire case. Moreover, I would suggest that a reasonable mistake of fact is always a question for the jury. Always. Now maybe where there's a mistake of law in the old days, that was conflated with the second prong of qualified immunity, whether the law was clearly established. But a mistake of fact, from our perspective, there was no mistake, number one. Number two, if there was a mistake, it was not reasonable. And now that we're post-jury verdict, we have to give every deference in support of that verdict and technically not consider evidence the jury was not required to believe. Now they called this witness, Gasper, who said there was a five-second, and we cited the trial testimony, at least five seconds between the first volley and the second volley. The positioning was up to 15 to 20 feet. He started right next to the sidewalk. He ended up right next to the sidewalk. He turned away from him, and I would submit there's more evidence in the trial record than this panel had on summary judgment. For example, the medical examiner testified that not only were the shots to the back, clearly when his back was to the shooter, but the shot to the back of the arm was consistent with being struck with his back to the shooter because it was in the back of his arm, and more importantly, his arm would have to be in a down position to get that shot to the back. So the evidence at trial was there were three shots that struck him when he was turned. Moreover, one of the shots fractured his T9 vertebrae, and the medical examiner testified more likely than not he would have been immediately incapacitated, unable to make voluntary movements with his lower extremities, such as walking. Was the shot to the arm the same arm in which the bat fell? Yes. So that was an important fact. But there's more than that, Your Honor. For example, because he ended up face down, facing away from the officer, he was so far from the officer, they had to try to figure out how he could be advancing and getting close to him if he ended up so far away. So at their meeting, they came up with this idea that they would say he advanced, got somewhat close, and then after he was shot all these times, he turned around and took three to four steps away from the officer, traveling approximately 10 feet before falling down. Well, each witness said when he was shot, he went right down to the ground, number one. Number two, the officer in his original statement said he went right down to the ground. And number three, the medical examiner said it'd be unlikely he'd be able to travel at all. And as was pointed out in the record, there were multiple credibility issues with Sergeant Ponder. For example, he said he heard over the radio dispatch that he had threatened a woman. And the radio dispatch which played, it was nowhere on there. He said he saw someone with blood on their face. The picture was taken of that person. There was no blood on their face. He claims he had two bats. Nobody says he has two bats. Not one other witness said he had two bats. As you pointed out, Judge McGowan, which is very important, several witnesses said the decedent would take a step forward, maybe two, and then back. And the both of them were keeping the same distance until the shots occurred without warning. But the most important part of the case from our perspective was the gap between the shots, the pause. His ability to reposition, his ability to reassess. Now the back is to him, and he continued to fire. We believe three shots. And sadly, two of the shots struck his back, and those are the shots that killed him. Let me ask you, in some ways the briefing conflates sufficiency of the evidence, qualified immunity, and the facts. So those three buckets of information are in front of us. What Ponder's counsel said is that it's a question of law, and it was undisputed at trial, that it was reasonable for Ponder to mistakenly perceive Nehara as a deadly threat. So I'd appreciate if you could unpack this and give us your view on where the qualified immunity, clearly established law ends, and where the factual disputes then start. Yes, thank you, Your Honor. Reasonable mistake of fact is always a question for the jury. There's multiple published Ninth Circuit opinions that say that. Johnson v. Bay Area Rapid Transit, Torres v. City of Madera, Wilkins v. City of Oakland, Branscrum v. San Ramon Police Department, and others. It's always a question of fact for the jury, because whether it was a mistake is a question of fact, whether it was reasonable is a question of fact, and that is why it's included in the jury instruction, as a factor. And, as I said, it was argued both in the testimony and closing argument in this case, and any reading of the record will clearly show that. So since they're conceding the sufficiency of the evidence, they're conceding that he used unconstitutional deadly force that killed this person, we're now stuck at most with qualified the second prong, whether the law was clearly established, which this Court has already held. This Court pointed to Hayes, to Morris, talked about Garner and Graham. There's the case of Glenview, Washington County. All put the officer clearly on notice. In fact, this Court found, under plaintiff's facts, it falls within the obvious. I would like you to respond to the answer that I was given, that the facts are different, and what was pointed out in one of the fact and dispute was that that was pointed down, and that was not the testimony at trial, and therefore this issue is still open and wasn't decided in the interlocutory qualified amenity case. We had an answer on that. Will you respond to that? Yes. So I think it is true that, at least for the first shot or two, there wasn't clear evidence that it was down, although there's evidence that whether it was one bat or two or on his shoulder or somewhere else is all over the place. What was clear from the medical examiner's testimony, that once he turned around to get the shot to the back of the arm, the bat had to be down. More importantly, there was one witness who had him stationary throughout the shots, and this witness's statement was referred to by one of the police practice experts. But I think, despite how you feel about whether he took a step or two and the shot started without warning, I think there's no way around that second volley of shots. And the evidence is clear. The witness said there was at least a five-second gap. That's the testimony. Now, they might not agree with it. They might not like it. They're claiming his testimony is speculative. That was his estimate. They called him as a witness. They also claim that this court shouldn't consider the forensic evidence because it's 20-20 vision of hindsight. Now, that I have never heard, that this court can't consider the trajectory of the shots and the medical and physical and forensic evidence because it wasn't known by the officer at the time. Clearly, direct and circumstantial evidence is very powerful, and sometimes forensic and medical evidence may be more powerful and persuasive than witnesses. Why wouldn't it be reasonable to make a mistake on location if there was such a short time between the initial shots to the chest and then when he turned, so that the officer didn't have enough time to perceive a change in the threat position? Because, number one, that question's already been decided by the jury. But, number two, to answer your question specifically, in this case, it would be for several reasons. Number one, the officer in his original statement acknowledged that he himself was aware that the sedent had turned away from him, and he repositioned himself, and it was less of a threat. That came in on cross-examination of the sergeant, but it also came in on their own police practice expert testimony that he was aware there were two distinct volleys of shots with a pause and that the threat had lessened or stopped, immediately following the first volley of shots. So that's number one. Number two would be the timing. In other words, if we were talking about half of a second, as opposed to the testimony in the record of five seconds, where someone has an opportunity to assess, that, in my opinion, could not be a reasonable mistake as a matter of law. Otherwise, in every single case where MSJ is denied, the court holds the law was clearly established, the jury finds the facts in favor of the plaintiff, and credibility problems with the officer, they're going to come before the Ninth Circuit and say, oh, how about a reasonable mistake? That, in my opinion, that is not part of the second prong of a qualified immunity analysis. They're making something up. Even in Blanford, which has different facts, has been noted. In that case, the court said, under all those facts, the court found it was a reasonable mistake. The jury didn't find that, and that would have been more to the first prong, not the second prong. So they're really, in my opinion, conflating and confusing the qualified immunity doctrine. They're saying, on the one hand, there's no disputed facts, but all the facts are disputed. They're saying, on the other hand, we agree the use of deadly force was unconstitutional, but they're telling the panel it was reasonable. In response to counsel's question. And obviously, it has to be, up to the judge's question, it has to not just be a potential threat. Obviously, it has to be an immediate threat of death or serious bodily injury. And the two witnesses they're relying on were so impeached. Witness Moreno thought he was tased twice. And she was watching it from a distance and watching it peripherally for the second part of the shooting. Gasper went in and out of his house and was aware there was a five-second gap. So when they stand before your honors and say, oh, this is all undisputed, I think the testimony is different. And I also think they arguably waived it. I know there's the Dupree case, but the Dupree case says you don't have to include it in a Rule 58 motion if it's a purely legal issue. This is not a purely legal issue because it depends on the facts. Well, if we credit their statement in their reply brief, in which they characterize it, I think, as a legal issue. Well, of course, they have to characterize it that way. Well, I understand that, but they've characterized it as a legal issue. If it is a legal issue, would you agree it wouldn't be waived or forfeited? Yeah, if it's a purely legal issue, not dependent on any facts, because that's what the cases say. If it's a purely legal issue, it doesn't depend on the facts of the particular case, I would agree. I just don't think this is a purely legal issue that doesn't depend on the facts because that's all they've been talking about is the facts of the case. Well, we also had an earlier case of Tan Lam in which the court said if you make an argument in the 50A motion and the facts are the same underlying facts as the one you're going to make in the 50B motion, then you don't have a waiver. Why wouldn't that excuse them from using the magic words qualified immunity here? Because according to them, well, for two reasons. One, I think there are specific cases that say you have to actually identify the qualified immunity defense. I don't recall the exact wording of Tan Lam, although I'm generally familiar with the case. But I would also say that at a minimum, you would expect to preserve the issue for appeal. They would have argued reasonable mistake of law in the 50A or 50B. It's nowhere there, and here they're arguing it. They claim to you for the first time, although I'll submit it was part of the trial record. So from the plaintiff's perspective, we think if the court looks at this carefully, the court will conclude that this reasonable mistake of law is a factual issue that was already decided by this jury and argued during the trial. So the first prong is done. The second prong, the court has already found the law was clearly established. And so answering the question, well, what if the bat's down or up or on the shoulder for the first shot or two and down for the rest of the shots, I would submit it doesn't change anything. In fact, the evidence got better in trial as to the gap, as to the distance, as to the resting position of his body, and as to the credibility problems that Sergeant Ponder had. And the lower court here, Judge Dolly Gee, I feel did a really good job in her order denying their post-trial motions, summarizing the evidence, including summarizing the credibility issues. I think she pointed to about six of them with Sergeant Ponder's trial testimony, indicating the jury may have thrown out his testimony altogether. And when he testified, just as he was... Well, when he testified at deposition and trial that he fired all five shots in one second, within one second, all five, right at the center of his body, the jury rejected that. Because they knew, based on the witness testimony, the body positioning, the forensic and medical evidence, it could not have happened that way. What is the longest period in the record where someone testified as to this gap between the initial shots, which go to the chest, and the final shots? And that's another interesting point. Why don't you first tell me what this testimony shows? I'll answer your question. I'm so sorry. Gasper was asked this. And again, it was cross-examination by me because he was called by them. He gave a range. He said five to 30 seconds. And then he said at least five seconds. That was his testimony at trial. At least five. Now, could he be off by a second or two? Maybe. But it doesn't really matter because you couple that with the forensic and medical evidence and the original statement of the officer and their own police practice expert, it's clear that it wasn't like he turned away in a split second. There was a gap between the shots. And that's why we feel the law is so clearly established here and that the issue of reasonable mistake has already been decided. And if this court feels there hasn't been a waiver, that's fine. But I think from our perspective, it's very easy to say the jury found Fourth Amendment, no reasonable mistake, and the law is clearly established. This panel's found it before, and now there's even more evidence at trial to support it, unless anyone has any questions. All right. Just let me look at it. Thanks, counsel. Okay, we'll hear any rebuttal. Thank you, Your Honor. There were a number of misstatements of the record, so I'll just direct the court's attention to pages 951, where Shuman says she does not have the ability to say what position Mr. Naira was in, as well as the witnesses Moreno, 1146-1156, Gaspar, 1175-1193, and Lysia, 893-899. I do want to address the core fact that on the uncontroverted evidence, plaintiffs can make any statement they want, plaintiffs' counsel just did, without supporting evidence. There was no contravening witness testimony, no contravening account other than what was presented at trial. And on the facts that were presented at trial, our facts are much more comparable to cases that found reasonable use of force, including both pre-incident cases and post-incident cases. None of the cases that Mr. Galipo cited in his brief would have put Defendant Ponder on notice because they had different facts, as we explained in our reply. Particularly, I would like to draw the Court's attention to the Bond case, a recent U.S. Supreme Court case. Do you have any cases that would provide qualified immunity for an officer who shot someone in the back at a time when there was not a threat of deadly force? I think that question, Your Honor, presumes that the officer knows that there is not a threat. And that's a very different set of evidence than what we have here. The evidence here, and again, it was uncontroverted, that Defendant Ponder never saw, and no other witness saw, Mr. Nehera facing away during any point when shots were fired. That was something that was learned post-incident. Our facts are much more similar to the Bond case, where you had a subject who grabbed a hammer by the handle, put it to his shoulder as if preparing to swing, was 6 to 10 feet away from the shooter, defied commands to drop the hammer, was in a stance as though to throw or charge the shooter with a hammer, did not advance. And yet the Supreme Court, in a per curiam opinion, found that qualified immunity was due and reversed the lower court of appeals. I could cite to Ventura, which is in our brief, to Haim, which is in our brief, all of which have facts that are much more comparable where qualified immunity was found. Plaintiffs, by contrast, did not cite to any cases with facts comparable to what was presented at trial. And we submit that the trial record was actually stronger on qualified immunity than the record that was before this court on interlocutory appeal. And since my time has expired, Your Honors, I would thank the court for their time and their consideration. I appreciate your questions. Thank you, counsel. Any questions from Judge McKibbin or Judge Rustani? No, thank you. Nothing further. Okay. Thank you all.  This case shall now be submitted and the court will recess for the day. Thank you again. Thank you, Your Honor. All rise. This court for this session stands adjourned. Thank you.
judges: McKEOWN, GOULD, Restani